McFarland, J.,
delivered the opinion of the Court.
The' facts upon which this action was brought, are very imperfectly set forth in the bill of exceptions; but it appears that Smith, the plaintiff below, resided in Shelby county; that about the early part of July, 1862, his cotton-gin, with some cotton and cotton-seed, were destroyed by fire, and that soon after this, he left his home, and retired within the Federal lines — perhaps to the State of Illinois, where he remained for some two years or more. He took with him at the time he left, some property, but left his family and a considerable amount of property behind. Soon after Smith left home, in August or September, a sale was had of his personal property, crop, etc. This purported to l e a sale by the plaintiff in error, Cobb, and one Moore, acting as officers, and it is to be inferred that sale was made under some proceedings instituted by, the creditors of Smith; but this is not made clear from anything in the plaintiff’s testimony.
*3 In August, 1865, Smith brought this action against the plaintiffs in error and others. The declaration is for the conversion of a large amount of personal property. To this the defendants pleaded not guilty. Subsequently an amended declaration or an additional count was filed, which charges, that the defendants illegally entered his premises, and unlawfully and wrongfully converted and 'appropriated to their use, certain specified stock and other property of the plaintiff; and also that they burned his cotton-gin, with cotton in it. No further plea was filed to this amended or additional count.
We must assume either that the plea of uot guilty already filed, applied also to this count, or that the count in the declaration was abandoned by the plaintiff. The result in either event is the same. There was a general verdict for $2,000 damages against Charles Crenshaw, E. H. Cobb, J. S. Dickerson, Wm. Ross and John Bond, Sr., and in favor of the other defendants. A new trial was refused, and judgment rendered upon the verdict, from which the plaintiffs in error have appealed.
The bill of exceptions purports to set out all the evidence. We can gather from it, that the cotton-gin was burned — how or by whom does not appear. The only effort made to connect any of the defendants below with this burning, was aimed against Wm. Bond; but he was very properly acquitted by the jury, as there was no sufficient evidence against him. And there is no evidence to support a verdict against the plaintiffs in error upon this part of the case.
*4 As no exception was taken to the irregular and erroneous proceeding of joining in the same declaration, and in the same count, a claim for the conversion of personal property, with a claim for burning the cotton-gin, we will not now notice it, but proceed to enquire whether there is error in the record, treating it as a verdict and judgment for the conversion of the other personal property.
As we have said, the plaintiff’s proof as to the conversion, is not satisfactory. It does not show, with any distinctness, who caused or procured the sale of Smith’s property, or the cause or pretext for making the sale.
1st. As to the plaintiff in error, John Bond, Sr., the only evidence against him in the record is, that in the year 1860 or 1861, he made threats of personal violence against Smith, and had bad feelings towards him. This is all. He does not seem to have been one of the creditors of Smith; he was not at the sale, and had no connection with it.
2d. As to Charles Crenshaw. He was at the sale, but bought no property and took no part in it. His brother Frank, or Dick Crenshaw, was auctioneer during the sale. He told one witness that if Smith had not gone up the river, he would not have been sold out; said he had got out attachment against Smith; said he thought he had as well make his money off of Smith while times were good; but it does not appear that any attachment issued at the instance of Crenshaw, or was levied upon the property in question, or that it was sold at his instance, except so far as *5 this may be inferred from the evidence above set forth. In the testimony of Moore, a witness for the defendants, who was one of the special constables who sold the property; it appears that part of the money received by him was paid to Mr. Crenshaw, but to which one is not certain.
3d. As to Dickerson, the plaintiff’s evidence contains no allusion to him, except to show that he was not at the sale. The only evidence against him, whatever, was furnished by the defendants, who introduced several attachments, sued out before a Justice of the Peace, against Smith. One of these was sued out by Dickerson, and there appears upon it a levy made by E. H. Cobb — who was deputized by the Justice — upon the property of Smith. Whether any further steps were taken under this attachment does not appear. Nor does it appear that it was under the supposed authority of this attachment that the sale was made, or that Dickerson received any of the proceeds of sale.
A similar attachment was sued out by Ross. It appears also that Ross was at the sale and bought property.
This is the substance of the plaintiff’s testimony, omitting the details. The defendants introduced the two attachments of Ross and Dickerson, and also attachments sued out by J. L. Bolton, J. L. Smith and E. G. Sewell, all of which, except the one in favor of Bolton, were levied on Smith’s property, by Cobb, under a deputation of the Justice. The attachment of Bolton was levied by Moore.
The Circuit Judge held that these attachments could *6 not be heard as a justification for the seizure or conversion, and in this he was correct, as there was no plea setting up this defense; and furthermore, they are in material respects insufficient for this purpose. This defense could not be made under the general issue, at common law — it being a justification. The record under which the seizure or conversion is justified, would have to be specially pleaded. And under the Code the defense could not be allowed, unless specially pleaded or notice given. Code, 2915.
The authorities referred to, in regard to the distinction between the liability of an officer, and those acting under him, are not applicable — the attachment being properly rejected as a justification, all who participated in the wrong are alike -wrong-doers. 2 Hill-iard on Torts, 301.
The Circuit Judge instructed the jury at length upon the doctrine of conspiracy — telling them among other things, that if the defendants conspired together to break up the plaintiff, by destroying his property by fire, or to seize property and expose it to sale-without authority of law, they are liable to plaintiff for all waste and damages incident to their proceedings. If they set on foot any scheme, or formed any association, whether civil, political or otherwise; or if they acted in concert with others, who have set on foot any scheme or measure, whereby the plaintiff had to flee the country for safety of his person, etc., etc., in order to produce the legal pretext for seizing the property of plaintiff and making waste, by sacrifice,, by improper sale, or by fire, they, the defendants, *7 would be wrong-doers, etc. And in other parts of the charge, lays down to the jury the rule, that conspirators are responsible for each other’s acts. Without stopping to enquire whether the foregoing be correct, as abstract propositions of law, or not, it is sufficient to say, that it is wholly inapplicable to the facts disclosed in the record, and was certainly calculated to mislead the jury. Instructions given to a-jury are intended to enable them to decide correctly upon the facts in proof, and should be confined to the case made in the record; and a charge upon an assumed state of facts not proven in the record, is generally calculated rather to bewilder than enlighten the jury. Bridges v. Vick, 2 Hum., 516. And in a case like this, where we can see the pernicious effect likely to be produced by this charge, upon the minds of the jury, it is of itself error for which the judgment should be reversed. Hill v. Childress, 10 Yer., 514. Although in cases where the court can see that no injury could have resulted from the improper charge,, it might not be ground for reversal.
This record shows no conspiracy or concert of action between these parties. At most they were attempting to collect debts that they claimed against Smith. The acts of some of the parties were separate and distinct from the others, and rather antagonistic. A defense' made, and one well worthy of consideration, was, that there was no joint conversion of the property; that those of the defendants who were guilty, were guilty of separate acts of conversion, and no joint verdict should be rendered against all, for the separate *8 acts of each. And in this view, the charge of the court upon the doctrine of conspiracy, as a ground for a joint verdict against all, was a material error. The error is, that this charge furnished .a pretext, upon which the jury could find all the parties guilty of the separate acts of each other.
The allusion in the charge to civil and political associations, with which the defendants were assumed to have been acting, would be hard to understand, if we confine ourselves to the proof in the record. Outside of the record, however, it is not difficult to understand its meaning and effect. And in the sense it must have been understood by'the jury, it was clearly erroneous.
In connection with this same question, his' honor was requested by the defendants, to instruct the jury, that if the acts of the several parties were separate and distinct, that no joint verdict .could be rendered. The response to this is somewhat obscure; but perhaps amounts to a refusal of the instructions — and this was clearly erroneous.
We should be constrained to reverse this judgment as to the plaintiffs in error, John Bond, Sr., and J. S. Dickerson, upon the ground that there is no evidence to sustain the verdict as to them. Nor are we satisfied that there is evidence to sustain the verdict to the full extent, against Boss and Crenshaw. We do not mean to say, that the plaintiff below was limited in his right to recover, to the specific items of property purchased or actually converted by the defendants found guilty; but we mean that no defendant should *9 have been held liable for the seizure and conversion, unless it was shown, that such defendant actually seized or converted the property by purchasing it at the sale, or otherwise; or that he participated in the wrong by causing or procuring the attachments to be issued, under which the property actually was seized and sold, or that he received the proceeds or some part of it; or that in some other mode was a party to the proceeding, under which the property, for which he is sought to be • held liable, was seized and converted. In other words, parties to be held jointly liable, must appear to be jointly guilty. 6 Col., 510. And inasmuch as the improper charges of the Circuit Judge may- have resulted in' the jury holding the defendants below, to some extent, immediately liable for the acts of each other, and of others not sued, the judgment as to all will be reversed and a new trial awarded. We do not deem it important to notice the other questions made.